**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

               **Plaintiff,**

**v.**

                                                                  **17-CR-55V(Sr)**

**JOSHUA LEVINE,** *et al.*

               **Defendants.**

---

## DECISION AND ORDER

On March 9, 2017, the Grand Jury returned an indictment charging Robert Moore and Joshua Levine with conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 846. Dkt. No. 1. This case was thereafter referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions. Dkt. No. 2. On April 12, 2018, a multi-count superseding indictment was returned, charging Robert Moore, Joshua Levine, Reese Moore, and Kevin Abernathy with conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) & (C), and 846. Dkt. No. 52. Of particular relevance here, Joshua Levine was also charged in this superseding indictment with possession with intent to distribute and/or distribution of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and distribution of heroin and fentanyl causing death in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. Dkt. No. 52.

**Application for an Order Authorizing Personal or Confidential Information about a Victim**

On March 26, 2019, defendant Joshua Levine moved this Court for an order authorizing a subpoena for the medical records of Bianca Gambino, who died from fentanyl and morphine intoxication on February 18, 2017, allegedly from drugs that defendant provided her. Dkt. No. 129. Defendant seeks Ms. Gambino's medical records relating to a prior overdose Ms. Gambino suffered on January 26, 2017, 23 days prior to her death. Defendant moves pursuant to Rule 17(c)(3) of the Federal Rules of Criminal Procedure which governs the production by subpoena of personal or confidential information about a victim. On behalf of Ms. Gambino's family, the government opposes the request on the basis that the records are irrelevant and are being sought "in pursuit of an improper jury nullification defense at trial." Dkt. No. 138. This Court agrees and for the following reasons, denies defendant's request for an order authorizing the subpoena.

**Pre-trial Use of Rule 17(c) Subpoena Versus Rule 16 Discovery**

Rule 16 of the Federal Rules of Criminal Procedure, the primary discovery mechanism in criminal cases, "delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos*, 27 F.3d 65, 68 (3rd Cir. 1994) (noting that the government is obligated under the Jencks Act to turn over "any statement" made by a witness that relates to her testimony, and is required to produce all "exculpatory" evidence under *Brady v. Maryland*, 373 U.S. 83 (1963)). Upon request,

Rule 16 mandates that the government "permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items," Fed.R.Crim.P. 16(a)(1)(E), provided that "the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." *Id.* (emphasis added).

Rule 17(c), on the other hand, provides a means for a defendant to subpoena third-party witnesses and documents in third-party's possession for purposes of a trial or a hearing. *United States v. Llanez-Garcia*, 735 F.3d 483, 493-94 (6th Cir. 2013) (Rule 17 extends to subpoenas for preliminary examinations, grand jury investigations, depositions, and determinations of a factual issue raised by a pre-trial motion or a post-trial motion). Rule 17(c)'s "chief innovation" is to "expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). To that end, under Rule 17(c), a criminal defendant "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed.R.Crim.P. 17(c)(1). In its discretion, the court itself may order a witness "to produce the designated items in court before trial or before they are to be offered in evidence," and when the subpoenaed items arrive, "may permit the parties and their attorneys to inspect all or part of them." *Id.*

A subpoena requiring a third party to produce personal or confidential information about a victim – such as the HIPAA-protected medical records of Ms. Gambino's prior overdose[1] – may be served only by court order after notice is given to the victim "so that the victim can move to quash or modify the subpoena or otherwise object." Fed.R.Crim.P. 17(c)(3). Under the Victims' Rights Act, 18 U.S.C. § 3771(a)(8), the government has standing to challenge a subpoena on behalf of a victim. *United States v. Felton*, No. 14-20529, 2017 WL 2276990, at *1 (E.D. Mich. May 25, 2017); *United States v. Jenkins*, 895 F. Supp. 1389, 1393 (D. Haw. 1995); *United States v. Crutchfield*, No. 514R00051DLJPSG, 2014 WL 2569058, at *1 (N.D. Cal. June 6, 2014).

A party seeking pretrial production pursuant to Rule 17(c) must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699 (1974). Put another way, "the proponent of a subpoena returnable before trial must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nix*, 251 F. Supp. 3d 555, 563 (W.D.N.Y. 2017) (quoting *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 (S.D.N.Y. 2011)).

---

[1] The HIPAA Privacy Rule protects the individually identifiable health information of a decedent for 50 years following the date of death of the individual. 45 C.F.R. § 160.103.

The Supreme Court has cautioned that Rule 17(c) is "not intended to provide an additional means of discovery" beyond that which is permitted under Federal Rule of Criminal Procedure 16. *Bowman Dairy Co.*, 341 U.S. at 220; *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) (warning that "[c]ourts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16"); *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (stating that "Rule 17(c) is not a method of discovery in criminal cases"). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes something useful will turn up, the requirement of specificity will not have been met." *United States v. Leaver*, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005) (internal citations omitted).

Defendant argues that "[r]eviewing the records from Ms. Gambino's overdose of January 26, 2017 will provide [defendant] with an understanding of whether Ms. Gambino died as a result of heroine [sic] or a combination of drugs in her system along with other factors. The requested records will establish the type of medical condition Ms. Gambino was in before she died . . . [including] a chemistry of her blood in her first overdose and show what other drugs she had in her system. Those drugs may have contributed to her subsequent death." Dkt. No .129, p. 3. Defendant contends that the prior overdose records, "the crux of Joshua Levine's defense," must be disclosed because Ms. Gambino's autopsy report "basically states 'here is a body' . . . [,] and the blood work shows that she had fentanyl in her system but is not

conclusive as to establishing it as the cause of Ms. Gambino's death." Dkt. No. 129, p. 4. Defendant characterizes the autopsy as "a five (5) page . . . targeted autopsy . . . where the Medical Examiner's Office found a needle in her arm and concluded it was an overdose." Dkt. No. 129, p. 4. "Because the autopsy is vague and there are no thorough records," defendant argues, "the hospital and ambulance records will supplement . . . to answer the question: What was Ms. Gambino habitually using and what exactly caused her death[?]" Dkt. No. 129, p. 4.

Defendant's arguments ignore certain fundamental legal and factual realities about this case, namely, that other discovery turned over to defendant, including Ms. Gambino's posthumous toxicology report and Pathologist Dr. Katherine Maloney's Grand Jury Testimony interpreting it, establish that Ms. Gambino was an "otherwise healthy young woman" who had fentanyl, morphine (possibly heroin)[2] and marijuana in her system at the time of her death, but only fentanyl was present in lethal

---

[2] Dr. Maloney testified that it was either morphine or heroin in Ms. Gambino's blood, but they could not tell because there was "no 6-monoacetylmorphine." Dkt. No. 138, p. 9. According to an article published in Forensic Science, Medicine and Pathology, 6-Monoacetylmorphine (6-MAM, 6-acetylmorphine, or 6-AM) is one of three active metabolites of heroin:

> Heroin has a half-life of 2–6 min and is metabolized too quickly to be detected in autopsy samples. The presence of 6-acetylmorphine (6-AM) in urine, blood, or other samples is convincing evidence of heroin use by a decedent, but 6-AM itself has a half-life of 6–25 min before it is hydrolyzed to morphine, so 6-AM may not be present in sufficient concentration to detect in postmortem samples.

Ashley D. Ellis, Garald McGwin, Gregory G. Davis & Daniel W. Dye, <u>Identifying cases of heroin toxicity where 6-acetylmorphine (6-AM) is not detected by toxicological analyses</u>, Forensic Science, Medicine and Pathology (April 25, 2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4967084.

amounts.[3]  Dkt. No. 138, pp. 6-10.  The lab report analyzing the used syringe found on Ms. Gambino's person, showed that it contained heroin and fentanyl, which is wholly consistent with Ms. Gambino's autopsy and toxicology findings.  Dkt. No. 138, p. 10.

   This Court finds that the autopsy and toxicology reports, along with Dr. Maloney's testimony, provide sufficient information about what substances were in Ms. Gambino's body at the time of her death such that defendant can prepare a defense.  Defendant's theory that Ms. Gambino had residual drugs in her system from 23 days prior to her fatal overdose or that she suffered from underlying health problems have no basis in science, law or fact; and therefore, do not satisfy Rule 17's relevancy requirement.  It bears noting that to satisfy the "death results" enhancement under 21 U.S.C. § 841, the government need not prove that defendant proximately caused Ms. Gambino's death by giving her drugs (or that it was reasonably foreseeable that she would die if he gave her the fentanyl), but must show that the drugs distributed by defendant were the "but for" cause of her death (i.e., that but for the fentanyl that defendant provided to her, Ms. Gambino would not have died).  *United States v. Burkholder*, 816 F.3d 607, 621 (10th Cir. 2016).  As the Supreme Court noted, the "but for" requirement is hardly an "insuperable barrier" even in cases where a victim has several drugs in his or her system.  *Burrage v. United States*, 571 U.S. 204, 217 (2014) (citing cases).

---

  [3] Dr. Maloney explicitly testified that the morphine present in Ms. Gambino's blood was "too low" to be lethal and that "Marijuana never contributes to death."  Dkt. No. 138, pp. 9-10.

I agree with the government that "that there is not an expert . . . who could credibly testify, for example, about incremental toxicity from January 26, 2017, having an impact on a cause of death determination [on] February 18, 2017, and the defendant does not portend to have an expert claiming otherwise." Dkt. No .138, pp. 12-13. Given that defendant has failed to show that the requested subpoena would yield anything showing that Ms. Gambino died from something other than the drugs that he provided to her on February 18, 2017, he could only offer the prior overdose records in support of an improper jury nullification defense, by blaming Ms. Gambino for her own death. This is to be prevented at all costs. *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent"). Moreover, Ms. Gambino, as the victim of an alleged crime, possesses the right to be treated with fairness and with respect for her dignity and privacy. 18 U.S.C. § 3771(a)(8). These rights extend to Ms. Gambino's mother as both her parent and a representative of Ms. Gambino's estate. 18 U.S.C. § 3771(e)(2).

Based on the foregoing, I find that defendant has failed to meet his burden to show that the January 23, 2017 medical records he seeks are relevant and admissible. Accordingly, his motion for an order authorizing a subpoena pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure is DENIED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for the Issuance of a Subpoena (Dkt. No. 129) is DENIED.

**SO ORDERED.**

DATED:  Buffalo, New York
        May 14, 2019

                                        *S/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**